COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-215-CR
 
JOEL RODRIGUEZ CANTU                                                      
   APPELLANT
V.
THE STATE OF TEXAS                                                      
       STATE
------------
FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY
------------
OPINION
------------
I. INTRODUCTION
Appellant Joel Rodriguez Cantu appeals
from his conviction by a jury for the felony offense of bodily injury to a
disabled individual, Patty Cruz. In two points, Appellant complains that (1) the
trial court erred by not allowing Appellant additional time to hire another
lawyer and (2) the evidence was factually insufficient as to whether Cruz was
disabled. We affirm.

II. FACTUAL AND PROCEDURAL
BACKGROUND
The State charged Appellant under section
22.04(a)(3) of the penal code for an assault of his girlfriend, Patty Cruz,
which occurred on April 20, 2001, at Mermaid's, a bar in Pelican Bay. During
trial, the State called Cruz, who testified that she had cerebral palsy and
suffered from severe mental depression. Cruz also testified that she and
Appellant were living together and that they went to Mermaid's on April 20 to
celebrate being happy together. Additionally, the State called Terri Williams,
Danetta Blanchard, and Dawn Milson, who were all employees at Mermaid's and
observed the events pertaining to the assault. Finally, the State called Officer
Donald Duncan, who was dispatched to respond to a 911 call made from Mermaid's.
Appellant did not testify, and he presented no witnesses.
Cruz testified that before she and
Appellant left the bar, Appellant tried to pay the bar tab with his credit card,
but it was rejected. According to Cruz, the cashier embarrassed both of them by
waiving Appellant's card and shouting, "[T]his man has no money." Cruz
then paid the bill with her own credit card.
Blanchard, a waitress at Mermaid's,
testified that Appellant was angry about his credit card being rejected.
Blanchard testified that after Cruz paid, Appellant slapped Cruz with his palm.
Cruz slowly stood up to go outside and was stumbling to get away from Appellant.
Blanchard also testified that Cruz had difficulty moving her walker. Blanchard
saw Appellant grab at Cruz as she was leaving the bar, and Blanchard decided to
follow them outside.
Williams, a Mermaid's bartender, also
heard Appellant yelling when his credit card was denied. She saw Appellant and
Cruz go to their car and yell at each other. Williams went outside and got in
the car with Cruz to calm her down. Williams testified that Cruz would not let
Appellant in the car and that when he did get the door open, he slapped and hit
Cruz. Blanchard also testified that she saw Appellant hit Cruz four or five
times with his hands. Additionally, Williams saw Appellant grab Cruz's hair.
Williams testified that as Appellant hit Cruz, Cruz "[j]ust [sat] there,
but [that she was] not able to get up and move or do anything."
Blanchard and Williams testified that they
went outside to help defend Cruz. At some point, Blanchard ran back inside and
told Milson, another bartender, to call 911 because Appellant was hitting Cruz.
Williams testified that as she struggled to protect Cruz, Cruz was crying and
said, "[P]lease don't let him hit me, don't let him in, don't let him come
get me anymore. . . . I don't want him to hurt me." Williams, Milson, and
Blanchard physically pulled Appellant away from Cruz and held him while they
waited for the police.
Officer Duncan eventually arrived to
investigate the incident. Despite Officer Duncan's requests, Cruz refused to
make a written statement because she feared retribution from Appellant. Cruz did
tell Officer Duncan, however, that Appellant was upset about his credit card
being rejected. She also admitted that Appellant assaulted her several times
when they got in the car. Officer Duncan testified that Cruz's face was red,
which would have been consistent with an assault.
When Cruz testified, she presented a
different version of events. Cruz testified that when they left the bar, she
fell down outside because she falls a lot and her knees and ankles hurt. She
testified that Appellant helped her up and then took the car keys from her
because he thought she had drank too much that night. Cruz testified that they
were not arguing. Cruz also denied that Appellant hit or hurt her.
Cruz testified that she remembered one of
the girls who worked at the bar came outside, got in the car, and told her that
she should not be dating Appellant because of his ethnicity. At trial, Cruz
first testified that she barely remembered a police officer being at Mermaid's
and did not remember having any conversation with Officer Duncan. On
cross-examination, however, Cruz remembered that the police wanted her to fill
out a statement and answer questions, but she refused their requests. After
hearing and considering all of the testimony and evidence presented, a jury
convicted Appellant, found that he was a habitual felon, and assessed a
twenty-five year sentence.
III. FACTUAL SUFFICIENCY
In his second point, Appellant argues that
the evidence was factually insufficient to support a finding that the victim was
a "disabled individual" under section 22.04(c)(3) of the penal code.
Tex. Penal Code Ann. § 22.04(c)(3) (Vernon 2003). We disagree.
A. Standard of Review
In reviewing the factual sufficiency of
the evidence to support a conviction, we are to view all the evidence in a
neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996). Evidence is factually insufficient if it is so weak as to be
clearly wrong and manifestly unjust or the adverse finding is against the great
weight and preponderance of the available evidence. Johnson, 23 S.W.3d
at 11. Therefore, we must determine whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt
is so obviously weak as to undermine confidence in the verdict, or the proof of
guilt, although adequate if taken alone, is greatly outweighed by contrary
proof. Id. In performing this review, we are to give due deference to
the fact finder's determinations. Id. at 8-9; Clewis, 922
S.W.2d at 136. Consequently, we may find the evidence factually insufficient
only where necessary to prevent manifest injustice. Johnson, 23 S.W.3d
at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).
B. Application of Law to Facts
A person commits an offense if he or she
intentionally, knowingly, recklessly, or with criminal negligence, by act or
omission, causes bodily injury to a disabled individual. Tex. Penal Code Ann. §
22.04(a)(3). A "disabled individual" is "a person older than 14
years of age who by reason of age or physical or mental disease, defect, or
injury is substantially unable to protect himself from harm or to provide food,
shelter, or medical care for himself." Id. § 22.04(c)(3).
Patty Cruz testified that she had cerebral
palsy, and she candidly admitted that her condition caused her to fall
frequently and left her unable to keep up with things around the house. Cruz
also testified that, in addition to her cerebral palsy, she had arthritis. Cruz
last worked in 1986. While she received financial assistance from the
government, Cruz testified that she relied on Appellant for additional financial
support. According to Cruz, Appellant not only provided for her monetarily, but
he also helped her by cooking, cleaning, and doing things she was unable to keep
up with by herself.
During Cruz's cross-examination,
Appellant's counsel asked Cruz whether she was substantially unable to care for
herself at the time Appellant was arrested. Cruz insisted that she was and that
she "[had] always cared for [her]self and [her] family." When asked
whether she could protect herself from harm, Cruz replied, "Yeah, I can
protect myself. I'm -- if I get mad, I've got strong arms. I can pull
hair." Cruz also testified that she was substantially able to provide food,
shelter, and medical care for herself.
On redirect, the State reminded Cruz of
her earlier testimony that Appellant had helped her up when she fell outside the
bar. When asked whether she could have gotten up on her own, Cruz testified that
there was no way she could have done so. She stated, "If I fall . . . I
have to hold onto a chair or something. . . . [M]y legs are so bad, I can't get
up without holding on and using my arms to pick myself up. And there was nothing
for me to hold onto but him." Cruz agreed with the State that, if Appellant
had not been there to help her up, she could only have gotten up by herself if
she had "[c]rawled to something and maybe pulled [her]self up."
Additionally, Williams testified that she
had known Appellant and Cruz for four or five years. Williams testified that she
knew Cruz had cerebral palsy and had observed that Cruz had a "real hard
time getting around." Based on her observations of Cruz's physical
limitations, Williams stated, "She moves very slowly. She has to use either
a walker or crutches, like arm grip crutches, and she has a hard time standing
up and sitting down and getting places, you know, in and out of vehicles, or
just being able to move." Further, Williams testified that Cruz's medical
condition leaves her substantially unable to protect herself from harm or from
physical violence.
Milson also testified that she knew Cruz
as a patron of Mermaid's. Milson estimated that Cruz came to the bar once a
week. The State questioned Milson about her observations of Cruz's physical
capacity. Milson testified that on two or three occasions she had physically
assisted Cruz out of the ladies' room because she needed help.
Appellant argues that neither Williams nor
Milson was qualified to testify as to Cruz's health status or physical ability
and that such testimony was untrustworthy. Moreover, Appellant contends that the
testimony was inadmissible. In essence, Appellant complains that Williams's and
Milson's testimony should have been excluded because it was on a subject that
called for expertise and, thus, was neither rational nor helpful lay testimony. See
Tex. R. Evid. 701.
To preserve a complaint for our review, a
party must have presented to the trial court a timely request, objection, or
motion that states the specific grounds for the desired ruling if the grounds
are not apparent from the context of the request, objection, or motion. Tex. R.
App. P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim.
App. 1998) (op. on reh'g), cert. denied, 526 U.S. 1070 (1999). As
Appellant concedes in his brief, however, this testimony was admitted without
any objection. Consequently, we hold Appellant failed to preserve for our review
his complaint that William's and Milson's testimony exceeded the scope of lay
testimony. See Tex. R. App. P. 33.1(a)(1); Mosley, 983 S.W.2d
at 265.
Having extensively reviewed the record and
giving proper deference to the fact finder's determinations, we hold that the
evidence was factually sufficient to support the jury's finding that Cruz was a
"disabled individual" under section 22.04(c)(3) of the penal code. See
Tex. Penal Code Ann. § 22.04(c)(3); Johnson, 23 S.W.3d at 11; Clewis,
922 S.W.2d at 136. Accordingly, we overrule Appellant's second point.
III. DENIAL OF APPELLANT'S
MOTION FOR CONTINUANCE
In his first point, Appellant complains
that the trial court erred and thereby violated his due process rights under the
Fifth and Fourteenth amendments of the United States Constitution by refusing
his request for additional time to hire an attorney of his own choice. The
State, in response, argues that Appellant preserved nothing for review by making
an unsworn, unwritten motion for continuance. Further, the State contends that,
even if Appellant's point is before this court, the trial court did not abuse
its discretion by denying his motion for continuance.
A. Preservation of Error
Article 29.03 of the Texas Code of
Criminal Procedure requires that a motion for continuance be in writing. Tex.
Code Crim. Proc. Ann. art. 29.03 (Vernon 1989). In accordance with this rule,
this court, as well as the court of criminal appeals, has explicitly held that a
trial court's denial of an unsworn, unwritten motion for continuance presents
nothing for appellate review. Dewberry v. State, 4 S.W.3d 735, 755-56
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000); Woodall
v. State, 77 S.W.3d 388, 401 (Tex. App.--Fort Worth 2002, pet. ref'd); Felan
v. State, 44 S.W.3d 249, 255 (Tex. App.--Fort Worth 2001, pet. ref'd).
When Appellant's case was called for
trial, the State announced it was ready to proceed, and Appellant's counsel also
stated that Appellant was ready, but that he wanted to ask the court for time to
hire a new lawyer. Appellant then orally requested a continuance to hire another
attorney. The trial court stated, "Well, your motion for a continuance to
hire your own lawyer is denied. Today is trial day. The case is set for trial at
1:00 and it's now two minutes until 1:00." The court allowed Appellant to
present further detailed argument regarding the basis for Appellant's request,
but the court denied his request.
In his brief, Appellant concedes that his
motion for continuance was merely oral and that no written motion for
continuance appears in the record. As such, we hold that Appellant has not
preserved error for this point. See Dewberry, 4 S.W.3d at
755-56; Woodall, 77 S.W.3d at 401; Felan, 44 S.W.3d at 255.
B. Whether the Trial Court Abused
its Discretion
In the interest of justice we nonetheless
address Appellant's contention that the trial court abused its discretion in
denying his request for counsel of his own choosing. See Brown v. State,
630 S.W.2d 876, 879-80 (Tex. App.--Fort Worth 1982, no pet.) (addressing whether
appellant's due process rights were violated by the trial court's denial of his
motion for continuance even though no written motion for continuance was filed
as required under the code of criminal procedure). Appellant correctly points
out that, in all criminal proceedings, the accused shall enjoy the option of
having the assistance of counsel for his defense. Gideon v. Wainwright,
372 U.S. 335, 342-43, 83 S. Ct. 792, 795-96 (1963); Ahmadi v. State,
864 S.W.2d 776, 781 (Tex. App.--Fort Worth 1993, pet. ref'd). This right,
however, is neither unqualified nor absolute, for "that right must be
balanced with a trial court's need for prompt and efficient administration of
justice." Ex parte Windham, 634 S.W.2d 718, 720 (Tex. Crim. App.
1982); see also United States v. Barrentine, 591 F.2d 1069,
1075 (5th Cir. 1979); Ahmadi, 864 S.W.2d at 781.
The decision of whether to grant or deny a
continuance is within the trial court's discretion. See Wright v.
State, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000), cert. denied,
531 U.S. 1128 (2001). Further, with respect to a defendant's assertion of his
right to secure his or her own counsel, the court of criminal appeals has
enumerated several non-exclusive factors that should guide the trial court in
ruling on a motion for a continuance, including:

 (1) the length of the delay requested;
 (2) whether other continuances were requested and whether they were denied or
 granted; (3) the length of time in which the accused's counsel had to prepare
 for trial; (4) whether another competent attorney was prepared to try the
 case; (5) the balanced convenience or inconvenience to the witnesses, the
 opposing counsel, and the trial court; (6) whether the delay is for legitimate
 or contrived reasons; (7) whether the case was complex or simple; (8) whether
 a denial of the motion resulted in some identifiable harm to the defendant;
 [and] (9) the quality of legal representation actually provided.

Windham, 634 S.W.2d at 720; see
also Wilson v. State, 944 S.W.2d 444, 446 (Tex. App.--Houston [14th
Dist.] 1997), aff'd, 977 S.W.2d 379 (Tex. Crim. App. 1998).
Two minutes before voir dire began,
Appellant told the court:

        
 I would like to have a continuance to hire an attorney. At the time, I
 couldn't afford one, but now I have a good job and I just barely caught up
 with all of our bills and I need time to gather my witnesses. I feel [my
 counsel] has not been working in the best of my interests from the start.

Appellant claimed that he was set up by
the police, the bartender, and two waitresses who work at Mermaid's. According
to Appellant, his attorney advised him against filing charges against the police
officers for what Appellant believed was harassment. While Appellant argued that
his only witness to the alleged harassment and assault was Cruz, he also
admitted that she was already on her way to his trial. Appellant also expressed
his concern that the jury would not believe the testimony of his wife over that
of the Mermaid's employees and stated that was the reason he "wanted to
hire an attorney who [would] do something about all this from the start."
In his brief, Appellant states in
conclusory fashion that none of the defenses or witnesses he wished to have
testify were presented to the jury. We note that Cruz did testify at trial, and
Appellant's attorney had the opportunity to question her. Moreover, Appellant
did not relay to the trial court the names of any witnesses who he would have
called in the event the court granted his request for time to hire another
lawyer.
The record indicates that the trial court
appointed Appellant's trial counsel on August 24, 2001, which was over nine
months before trial began. Prior to trial, Appellant's attorney filed numerous
motions and requests on Appellant's behalf. No other motions for continuance or
motions to substitute counsel were filed. During Appellant's argument regarding
his request for a continuance, the court informed Appellant that he had been on
bond for some time, that he had an opportunity to hire a lawyer, and that the
court would not postpone the case any longer. Appellant replied, "I
couldn't afford one then. I finally got me a good job as a truck driver. I make
good money now. Caught up with all our bills." When the court followed up
by asking whether Appellant had made any effort to hire another lawyer before
the day trial was set, Appellant stated, "Well, it was the weekend. All
this hit us on the weekend." At that point, the trial court stated that the
case would not be postponed any longer and that he was going to trial.
Additionally, Appellant did not request a
specific period of time that his trial be delayed to find another attorney, and
he did not indicate that another competent attorney was prepared to try the
case. As the State points out, Appellant does not allege nor has he shown that
he actually received ineffective assistance of counsel in what the State
characterizes as a relatively simple case. We note that it was within the trial
court's discretion to consider whether Appellant's requested delay was for
legitimate or contrived reasons. See Windham, 634 S.W.2d at
720.
Under the circumstances of this case, we
conclude that the trial court did not abuse its discretion in denying
Appellant's oral request for continuance. See id.
Consequently, we hold the trial court did not violate Appellant's due process
rights under the Fifth and Fourteenth amendments of the United States
Constitution. We overrule Appellant's first point.
V. CONCLUSION
Having overruled Appellant's two points,
we affirm the trial court's judgment.
                                                     
   ANNE GARDNER
                                                     
   JUSTICE
 
PANEL B: HOLMAN, GARDNER, and WALKER, JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: April 3, 2003