COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-321-CR

 

 

JORDAN MICHAEL WALDROP                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
COUNTY CRIMINAL COURT NO. 6 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








In three issues, Jordan
Michael Waldrop argues (1) insufficient evidence to establish he was
intoxicated, (2) error in not allowing him to fully cross-examine one of the
State=s witnesses regarding the witness=s alleged bias and prejudice, and (3) error in failing to grant a
mistrial following a prosecutor=s alleged comment concerning Waldrop=s failure to testify.  We
affirm.

II.  Background

The basic background of this
case is not in dispute for purposes of this appeal.  At 2:30 a.m., Officer Ryan Eastlick was in a
parking lot facing the intersection of Collins and Copeland streets in
Arlington when he saw Waldrop drive through the intersection after the light
had turned red.  The car=s tires began to squeal, and the car cut in front of another car
fishtailed, and hit the concrete median.

When Officer Eastlick
approached the accident scene, Waldrop could not provide proof of insurance or
his driver=s
license.  Waldrop told Officer Eastlick
that he did not need medical attention, and Waldrop did not indicate that he
was on any type of medication or under a doctor=s care.  Waldrop=s eyes were bloodshot and watery, his speech was slurred, and he had a
strong odor of an alcoholic beverage coming from his person.  Waldrop admitted to the officer that he had
consumed two glasses of wine at a friend=s house.    








During the investigation,
Waldrop became increasingly irate, uncooperative, and hostile.  At some point, he began talking to a friend
on his cell phone.  When Officer Bill
Nordyke arrived, Waldrop was still on the phone.  He observed that Waldrop was unsteady and
that Waldrop had a strong odor of alcohol, bloodshot eyes, and slurred
speech.  Waldrop refused to comply with
the officers= requests to
get off the phone, so Officer Eastlick took the cell phone from Waldrop so that
the officers could continue their investigation.  Officer Eastlick testified that neither of
them did anything to cause Waldrop=s uncooperative behavior.

When Officer Nordyke told
Waldrop that he wanted to conduct a field sobriety evaluation as part of the
DWI investigation, Waldrop immediately sat on the curb, turned his back to the
officers, and refused to respond when asked if he intended to cooperate.  Waldrop refused to perform the field sobriety
tests.

Based on Officer Nordyke=s discussions with Officer Eastlick, the accident scene, and his own
observations, Officer Nordyke arrested Waldrop for driving while
intoxicated.  At the jail, when Waldrop
was asked for an emergency contact, he replied, AYour mother.@  In the Intoxilyzer videotaping room at the
jail, Waldrop refused to sign or take a copy of the statutory warnings and did
not provide a breath sample.  He refused
to stand on the designated spot and sat on the floor.  Waldrop=s overall attitude toward Officer Nordyke was uncooperative and
hostile.  Officer Nordyke testified that
the videotape viewed by the jury (i.e., State=s Exhibit 2) accurately reflected what he saw and heard on the side of
the road at the accident scene.








Officer Eastlick testified
that he is a member of the accident investigation unit, that he has specialized
training pertaining to the investigation and detection of signs of
intoxication, and that he is a field sobriety test instructor. In Officer
Eastlick=s opinion, Waldrop had lost the normal use of his mental and/or
physical faculties by the introduction of alcohol into his system.  Officer Eastlick believed that Waldrop was
intoxicated because of his driving behavior, his physical appearance at the
scene (e.g., his red, bloodshot, watery eyes and problems with his balance),
his admission to drinking, and his involvement in the accident.  A jury convicted Waldrop of driving while
intoxicated.  This appeal followed.

III.  Intoxication

In his first issue, Waldrop
asserts that there was insufficient evidence of intoxication to support his
conviction of driving while intoxicated.

A.  Standard of Review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789.  The trier of
fact is the sole judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v.
State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the fact finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the
evidence in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).  The sufficiency of the evidence should be
measured by the elements of the offense as defined by the hypothetically
correct jury charge for the case.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Ortiz v. State,
993 S.W.2d 892, 895 (Tex. App.CFort Worth 1999, no pet.). 

B.  Application








Waldrop attempts to explain
away the evidence of intoxication with the Amaybe defense@Cmaybe the car accident was caused by a mechanical breakdown of the
car, maybe his physical symptoms were caused by a medical condition, and maybe
his lack of cooperation was due to the extreme importance of his cell phone
call.  But Amaybe@ the record
does not contain any evidence of this.  A
review of the record under the recounted standard clearly indicates sufficient
evidence of intoxication, and Waldrop=s first issue is overruled.

IV.  Cross-Examination

In his second issue, Waldrop
asserts that the trial court erred by failing to allow him to cross-examine
Officer Eastlick concerning another officer=s relationship with a former girlfriend of Waldrop.








Specifically, Waldrop asserts
that his attorney was allowed to question Officer Eastlick about his knowledge
at or before the time of Waldrop=s arrest of a relationship between a fellow officer and Waldrop=s previous girlfriend but not his knowledge after the arrest.  In the presence of the jury, Waldrop=s counsel asked Officer Eastlick, AAnd are you aware that Officer Pena was dating the girl that this guy
lives with?,@ to which
the prosecution objected.  On further
examination and outside the presence of the jury, it appears, though the
testimony is somewhat unclear, that Officer Eastlick did not know Waldrop at
the time of the accident and arrest but sometime later learned that a fellow
officer was dating the woman who had, or did, live with Waldrop.  It was further established that Officer
Eastlick did not know of Waldrop=s relationship with the women until six months after the accident and
arrest.  The judge=s response to this evidence was, AAnd the response I am left with is, so?@  The following exchange then
occurred:

[DEFENSE
COUNSEL]: Well, I understand, Judge.  But
the jury is entitled to understand the relationship with the parties, however
marginal.  I mean, the district attorney
--

 

THE
COURT: What is it going to show?  What
are you trying to show?

 

[DEFENSE
COUNSEL]: Well, I want to establish a factual basis for that, in fact, that
these folks -- those folks do know each other. 
You know, it=s a
relevant issue, Judge, just the fact that they know each other.  I=m not necessarily going
anywhere beyond it, but I think I=m entitled to show they know
each other. 

 

We review a trial court=s decision to exclude evidence under the abuse of discretion
standard.  See Felan v. State, 44
S.W.3d 249, 253 (Tex. App.CFort Worth 2001, pet. ref=d).  That standard is whether
the trial court acted without reference to any guiding rules or principles, and
we will not reverse that decision as long as the ruling is within the  zone of reasonable disagreement.  See  Felan, 44 S.W.3d at 253-54; Megason
v. State, 19 S.W.3d 883, 889 (Tex. App.CTexarkana 2000, pet. ref=d). 








There was no evidence
presented of any bias or prejudice on the part of Officer Eastlick, only that
six months after the incident he became aware that a fellow officer was dating
a woman who had a relationship with Waldrop. 
Our reaction, like that of the trial judge, is, Aso?@[2]  Having established no possible
bias or prejudice, Waldrop has not shown that the evidence was relevant or that
the trial judge abused his discretion by failing to allow testimony of the post
arrest knowledge obtained by Officer Eastlick. 
Waldrop=s second
issue is overruled.

V.  Mistrial

Waldrop=s third issue asserts error on the part of the trial court in failing
to declare a mistrial after the prosecutor, according to Waldrop, commented on
his failure to testify.  

During the prosecution=s closing arguments, the following exchange occurred:

[PROSECUTOR]:
. . . . I=m
left with the words that Theodore Roosevelt said one time when he reminded us
that no man is above [the] law.  No man
is below the law.  Nor do we ask any man=s
permission when we require him to obey it.

 

Now, what I=m talking about is
Mr.--President Roosevelt was right on whenever he said that everybody is
required to obey the law.  Nobody is
special.

 








Talk about somebody who thinks they=re
special.  He=s
sitting right here before you today.  He
thinks--

 

[DEFENSE
COUNSEL]: I object . . . . That is a comment on his failure to testify.

 

THE
COURT: . . . . I=m
going to sustain the objection.

 

[DEFENSE
COUNSEL]: Can we have the jury instructed to disregard?

 

THE
COURT: The jury will disregard the last comment made by the prosecutor.  You shall not consider it for any purpose.

 

[DEFENSE
COUNSEL]: Move for mistrial.

 

THE
COURT: Denied. 

 

[Emphasis added.]

Waldrop attempts to argue
that the objected-to statement by the prosecutor was the same thing as using
the word AI@ in reference to something that the defendant might have testified to,
which could be objectionable under Cook v. State, 702 S.W.2d 597, 599
(Tex. Crim. App. 1984) (op. on reh=g).  We disagree.  The prosecutor is simply not commenting on
Waldrop=s failure to testify, but is commenting on the evidence adduced at
trial that apparently Waldrop did not feel he had to obey the officers= instructions regarding his cell phone or cooperate in any way with their
investigation, and felt compelled to inform jail personnel that his emergency
contact was A[y]our
mother.@  Waldrop=s third issue is overruled.








VI.  Conclusion

Having overruled Waldop=s three issues, we affirm the judgment of the trial court.

 

 

PER CURIAM

 

PANEL F:    MCCOY, J.; CAYCE, C.J.; and WALKER, J.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
September 7, 2006











[1]See Tex. R. App. P. 47.4.





[2]AAppellant=s
second point of error avers that even if probable cause existed to stop
appellant, it completely evaporated once the officers were shown the dealer=s
tag.  To this assertion we were tempted
to immediately reply, >So
what?=@  Foster v. State, 814 S.W.2d 874,
878-79 (Tex. App.CBeaumont
1991, pet. ref=d).