COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-321-CR

JORDAN MICHAEL WALDROP APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 6 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In three issues, Jordan Michael Waldrop argues (1) insufficient evidence to establish he was intoxicated, (2) error in not allowing him to fully cross-examine one of the State’s witnesses regarding the witness’s alleged bias and prejudice, and (3) error in failing to grant a mistrial following a prosecutor’s alleged comment concerning Waldrop’s failure to testify.  We affirm.

II.  Background

The basic background of this case is not in dispute for purposes of this appeal.  At 2:30 a.m., Officer Ryan Eastlick was in a parking lot facing the intersection of Collins and Copeland streets in Arlington when he saw Waldrop drive through the intersection after the light had turned red.  The car’s tires began to squeal, and the car cut in front of another car fishtailed, and hit the concrete median.

When Officer Eastlick approached the accident scene, Waldrop could not provide proof of insurance or his driver’s license.  Waldrop told Officer Eastlick that he did not need medical attention, and Waldrop did not indicate that he was on any type of medication or under a doctor’s care.  Waldrop’s eyes were bloodshot and watery, his speech was slurred, and he had a strong odor of an alcoholic beverage coming from his person.  Waldrop admitted to the officer that he had consumed two glasses of wine at a friend’s house. 

During the investigation, Waldrop became increasingly irate, uncooperative, and hostile.  At some point, he began talking to a friend on his cell phone.  When Officer Bill Nordyke arrived, Waldrop was still on the phone.  He observed that Waldrop was unsteady and that Waldrop had a strong odor of alcohol, bloodshot eyes, and slurred speech.  Waldrop refused to comply with the officers’ requests to get off the phone, so Officer Eastlick took the cell phone from Waldrop so that the officers could continue their investigation.  Officer Eastlick testified that neither of them did anything to cause Waldrop’s uncooperative behavior.

When Officer Nordyke told Waldrop that he wanted to conduct a field sobriety evaluation as part of the DWI investigation, Waldrop immediately sat on the curb, turned his back to the officers, and refused to respond when asked if he intended to cooperate.  Waldrop refused to perform the field sobriety tests.

Based on Officer Nordyke’s discussions with Officer Eastlick, the accident scene, and his own observations, Officer Nordyke arrested Waldrop for driving while intoxicated.  At the jail, when Waldrop was asked for an emergency contact, he replied, “Your mother.”  In the Intoxilyzer videotaping room at the jail, Waldrop refused to sign or take a copy of the statutory warnings and did not provide a breath sample.  He refused to stand on the designated spot and sat on the floor.  Waldrop’s overall attitude toward Officer Nordyke was uncooperative and hostile.  Officer Nordyke testified that the videotape viewed by the jury (i.e., State’s Exhibit 2) accurately reflected what he saw and heard on the side of the road at the accident scene.

Officer Eastlick testified that he is a member of the accident investigation unit, that he has specialized training pertaining to the investigation and detection of signs of intoxication, and that he is a field sobriety test instructor. In Officer Eastlick’s opinion, Waldrop had lost the normal use of his mental and/or physical faculties by the introduction of alcohol into his system.  Officer Eastlick believed that Waldrop was intoxicated because of his driving behavior, his physical appearance at the scene (e.g., his red, bloodshot, watery eyes and problems with his balance), his admission to drinking, and his involvement in the accident.  A jury convicted Waldrop of driving while intoxicated.  This appeal followed.

III.  Intoxication

In his first issue, Waldrop asserts that there was insufficient evidence of intoxication to support his conviction of driving while intoxicated.

A.  Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).
  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).  
The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case.  
Malik v. State
, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); 
Ortiz v. State
, 993 S.W.2d 892, 895 (Tex. App.—Fort Worth 1999, no pet.). 

B.  Application

Waldrop attempts to explain away the evidence of intoxication with the “maybe defense”—maybe the car accident was caused by a mechanical breakdown of the car, maybe his physical symptoms were caused by a medical condition, and maybe his lack of cooperation was due to the extreme importance of his cell phone call.  But “maybe” the record does not contain any evidence of this.  A review of the record under the recounted standard clearly indicates sufficient evidence of intoxication, and Waldrop’s first issue is overruled.

IV.  Cross-Examination

In his second issue, Waldrop asserts that the trial court erred by failing to allow him to cross-examine Officer Eastlick concerning another officer’s relationship with a former girlfriend of Waldrop.

Specifically, Waldrop asserts that his attorney was allowed to question Officer Eastlick about his knowledge at or before the time of Waldrop’s arrest of a relationship between a fellow officer and Waldrop’s previous girlfriend but not his knowledge after the arrest.  In the presence of the jury, Waldrop’s counsel asked Officer Eastlick, “And are you aware that Officer Pena was dating the girl that this guy lives with?,” to which the prosecution objected.  On further examination and outside the presence of the jury, it appears, though the testimony is somewhat unclear, that Officer Eastlick did not know Waldrop at the time of the accident and arrest but sometime later learned that a fellow officer was dating the woman who had, or did, live with Waldrop.  It was further established that Officer Eastlick did not know of Waldrop’s relationship with the women until six months after the accident and arrest.  The judge’s response to this evidence was, “And the response I am left with is, so?”  The following exchange then occurred:

[DEFENSE COUNSEL]: Well, I understand, Judge.  But the jury is entitled to understand the relationship with the parties, however marginal.  I mean, the district attorney --

THE COURT: What is it going to show?  What are you trying to show?

[DEFENSE COUNSEL]: Well, I want to establish a factual basis for that, in fact, that these folks -- those folks do know each other.  You know, it’s a relevant issue, Judge, just the fact that they know each other.  I’m not necessarily going anywhere beyond it, but I think I’m entitled to show they know each other. 

We review a trial court’s decision to exclude evidence under the abuse of discretion standard.  
See Felan v. State
, 44 S.W.3d 249, 253 (Tex. App.—Fort Worth 2001, pet. ref’d).  That standard is whether the trial court acted without reference to any guiding rules or principles, and we will not reverse that decision as long as the ruling is within the  zone of reasonable disagreement.
  See 
 
Felan
, 44 S.W.3d at 253-54; 
Megason v. State
, 19 S.W.3d 883, 889 (Tex. App.—Texarkana 2000, pet. ref’d). 

There was no evidence presented of any bias or prejudice on the part of Officer Eastlick, only that six months after the incident he became aware that a fellow officer was dating a woman who had a relationship with Waldrop.  Our reaction, like that of the trial judge, is, “so?”
(footnote: 2)  Having established no possible bias or prejudice, Waldrop has not shown that the evidence was relevant or that the trial judge abused his discretion by failing to allow testimony of the post arrest knowledge obtained by Officer Eastlick.  Waldrop’s second issue is overruled.

V.  Mistrial

Waldrop’s third issue asserts error on the part of the trial court in failing to declare a mistrial after the prosecutor, according to Waldrop, commented on his failure to testify.  

During the prosecution’s closing arguments, the following exchange occurred:

[PROSECUTOR]: . . . . I’m left with the words that Theodore Roosevelt said one time when he reminded us that no man is above [the] law.  No man is below the law.  Nor do we ask any man’s permission when we require him to obey it.

Now, what I’m talking about is Mr.--President Roosevelt was right on whenever he said that everybody is required to obey the law.  Nobody is special.

Talk about somebody who thinks they’re special.  He’s sitting right here before you today.  He thinks--

[DEFENSE COUNSEL]: I object . . . . That is a comment on his failure to testify.

THE COURT: . . . . I’m going to sustain the objection.

[DEFENSE COUNSEL]: Can we have the jury instructed to disregard?

THE COURT: The jury will disregard the last comment made by the prosecutor.  You shall not consider it for any purpose.

[DEFENSE COUNSEL]: Move for mistrial.

THE COURT: Denied. 

[Emphasis added.]

Waldrop attempts to argue that the objected-to statement by the prosecutor was the same thing as using the word “I” in reference to something that the defendant might have testified to, which could be objectionable under 
Cook v. State
, 702 S.W.2d 597, 599 (Tex. Crim. App. 1984) (op. on reh’g).  We disagree.  The prosecutor is simply not commenting on Waldrop’s failure to testify, but is commenting on the evidence adduced at trial that apparently Waldrop did not feel he had to obey the officers’ instructions regarding his cell phone or cooperate in any way with their investigation, and felt compelled to inform jail personnel that his emergency contact was “[y]our mother.”  Waldrop’s third issue is overruled.

VI.  Conclusion

Having overruled Waldop’s three issues, we affirm the judgment of the trial court.

PER CURIAM

PANEL F: MCCOY, J.; CAYCE, C.J.; and WALKER, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: September 7, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P. 47.4
.

2:
“Appellant’s second point of error avers that even if probable cause existed to stop appellant, it completely evaporated once the officers were shown the dealer’s tag.  To this assertion we were tempted to immediately reply, ‘So what?’”  
Foster v. State
, 814 S.W.2d 874, 878-79 (Tex. App.—Beaumont 1991, pet. ref’d).