CANTU V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-215-CR

JOEL RODRIGUEZ CANTU APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  INTRODUCTION

Appellant Joel Rodriguez Cantu appeals from his conviction by a jury for the felony offense of bodily injury to a disabled individual, Patty Cruz.  In two points, Appellant complains that (1) the trial court erred by not allowing Appellant additional time to hire another lawyer and (2) the evidence was factually insufficient as to whether Cruz was disabled.  We affirm.

II.  FACTUAL AND PROCEDURAL BACKGROUND

The State charged Appellant under section 22.04(a)(3) of the penal code for an assault of his girlfriend, Patty Cruz, which occurred on April 20, 2001, at Mermaid’s, a bar in Pelican Bay.  During trial, the State called Cruz, who testified that she had cerebral palsy and suffered from severe mental depression.  Cruz also testified that she and Appellant were living together and that they went to Mermaid’s on April 20
 to celebrate being happy together. Additionally, the State called Terri Williams, Danetta Blanchard, and Dawn Milson, who were all employees at Mermaid’s and observed the events pertaining to the assault.  Finally, the State called Officer Donald Duncan, who was dispatched to respond to a 911 call made from Mermaid’s.  Appellant did not testify, and he presented no witnesses.

Cruz testified that before she and Appellant left the bar, Appellant tried to pay the bar tab with his credit card, but it was rejected.  According to Cruz, the cashier embarrassed both of them by waiving Appellant’s card and shouting, “[T]his man has no money.”  Cruz then paid the bill with her own credit card.

Blanchard, a waitress at Mermaid’s, testified that Appellant was angry about his credit card being rejected.  Blanchard testified that after Cruz paid, Appellant slapped Cruz with his palm.  Cruz slowly stood up to go outside and was stumbling to get away from Appellant.  Blanchard also testified that Cruz had difficulty moving her walker.  Blanchard saw Appellant grab at Cruz as she was leaving the bar, and Blanchard decided to follow them outside.

Williams, a Mermaid’s bartender, also heard Appellant yelling when his credit card was denied.  She saw Appellant and Cruz go to their car and yell at each other.  Williams went outside and got in the car with Cruz to calm her down.  Williams testified that Cruz would not let Appellant in the car and that when he did get the door open, he slapped and hit Cruz.  Blanchard also testified that she saw Appellant hit Cruz four or five times with his hands. Additionally, Williams saw Appellant grab Cruz’s hair.  Williams testified that as Appellant hit Cruz, Cruz “[j]ust [sat] there, but [that she was] not able to get up and move or do anything.”

Blanchard and Williams testified that they went outside to help defend Cruz.  At some point, Blanchard ran back inside and told Milson, another bartender, to call 911 because Appellant was hitting Cruz.  Williams testified that as she struggled to protect Cruz, Cruz was crying and said, “[P]lease don’t let him hit me, don’t let him in, don’t let him come get me anymore. . . .  I don’t want him to hurt me.”  Williams, Milson, and Blanchard physically pulled Appellant away from Cruz and held him while they waited for the police.

Officer Duncan eventually arrived to investigate the incident.  Despite Officer Duncan’s requests, Cruz refused to make a written statement because she feared retribution from Appellant.  Cruz did tell Officer Duncan, however, that Appellant was upset about his credit card being rejected.  She also admitted that Appellant assaulted her several times when they got in the car.  Officer Duncan testified that Cruz’s face was red, which would have been consistent with an assault.

When Cruz testified, she presented a different version of events.  Cruz testified that when they left the bar, she fell down outside because she falls a lot and her knees and ankles hurt.  She testified that Appellant helped her up and then took the car keys from her because he thought she had drank too much that night.  Cruz testified that they were not arguing.  Cruz also denied that Appellant hit or hurt her.

Cruz testified that she remembered one of the girls who worked at the bar came outside, got in the car, and told her that she should not be dating Appellant because of his ethnicity.  At trial, Cruz first testified that she barely remembered a police officer being at Mermaid’s and did not remember having any conversation with Officer Duncan.  On cross-examination, however, Cruz remembered that the police wanted her to fill out a statement and answer questions, but she refused their requests.  After hearing and considering all of the testimony and evidence presented, a jury convicted Appellant, found that he was a habitual felon, and assessed a twenty-five year sentence.

III.  FACTUAL SUFFICIENCY

In his second point, Appellant argues that the evidence was factually insufficient to support a finding that the victim was a “disabled individual” under section 22.04(c)(3) of the penal code.  
Tex. Penal Code Ann.
 § 22.04(c)(3) (Vernon 2003).  We disagree.

A.  Standard of Review 

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. 
 Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the 
verdict
, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id.
  In performing this review, we are to give due deference to the fact finder’s determinations.  
Id.
 at 8-9; 
Clewis,
 922 S.W.2d at 136.  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Johnson
, 23 S.W.3d at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

B.  Application of Law to Facts

A person commits an offense if he or she intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, causes bodily injury to a disabled individual.  
Tex. Penal Code Ann.
 § 22.04(a)(3).  A “disabled individual” is “a person older than 14 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect himself from harm or to provide food, shelter, or medical care for himself.”  
Id
. § 22.04(c)(3).

Patty Cruz testified that she had cerebral palsy, and she candidly admitted that her condition caused her to fall frequently and left her unable to keep up with things around the house.  Cruz also testified that, in addition to her cerebral palsy, she had arthritis.  Cruz last worked in 1986.  While she received financial assistance from the government, Cruz testified that she relied on Appellant for additional financial support.  According to Cruz, Appellant not only provided for her monetarily, but he also helped her by cooking, cleaning, and doing things she was unable to keep up with by herself.

During Cruz’s cross-examination, Appellant’s counsel asked Cruz whether she was substantially unable to care for herself at the time Appellant was arrested.  Cruz insisted that she was and that she “[had] always cared for [her]self and [her] family.”  When asked whether she could protect herself from harm, Cruz replied, “Yeah, I can protect myself.  I’m -- if I get mad, I’ve got strong arms.  I can pull hair.”  Cruz also testified that she was substantially able to provide food, shelter, and medical care for herself.

On redirect, the State reminded Cruz of her earlier testimony that Appellant had helped her up when she fell outside the bar.  When asked whether she could have gotten up on her own, Cruz testified that there was no way she could have done so.  She stated, “If I fall . . . I have to hold onto a chair or something. . . .  [M]y legs are so bad, I can’t get up without holding on and using my arms to pick myself up.  And there was nothing for me to hold onto but him.”  Cruz agreed with the State that, if Appellant had not been there to help her up, she could only have gotten up by herself if she had “[c]rawled to something and maybe pulled [her]self up.”

Additionally, Williams testified that she had known Appellant and Cruz for four or five years.  Williams testified that she knew Cruz had cerebral palsy and had observed that Cruz had a “real hard time getting around.”  Based on her observations of Cruz’s physical limitations, Williams stated, “She moves very slowly.  She has to use either a walker or crutches, like arm grip crutches, and she has a hard time standing up and sitting down and getting places, you know, in and out of vehicles, or just being able to move.”  Further, Williams testified that Cruz’s medical condition leaves her substantially unable to protect herself from harm or from physical violence.

Milson also testified that she knew Cruz as a patron of Mermaid’s.  Milson estimated that Cruz came to the bar once a week.  The State questioned Milson about her observations of Cruz’s physical capacity.  Milson testified that on two or three occasions she had physically assisted Cruz out of the ladies’ room because she needed help.

Appellant argues that neither Williams nor Milson was qualified to testify as to Cruz’s health status or physical ability and that such testimony was untrustworthy.  Moreover, Appellant contends that the testimony was inadmissible.  
In essence, Appellant complains that Williams’s and Milson’s testimony should have been excluded because it was on a subject that called for expertise and, thus, was neither rational nor helpful lay testimony.  
See
 
Tex. R. Evid
. 701.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if the grounds are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State,
 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).
  
As Appellant concedes in his brief, however, this testimony was admitted without any objection. 
 Consequently, we hold 
Appellant failed to preserve for our review his complaint that William’s and Milson’s testimony exceeded the scope of lay testimony.  
See
 
Tex. R. App. P.
 33.1(a)(1); 
Mosley,
 983 S.W.2d at 265
.

Having extensively reviewed the record and giving proper deference to the fact finder’s determinations, we hold that the evidence was factually sufficient to support the jury’s finding that Cruz was a “disabled individual” under section 22.04(c)(3) of the penal code.  
See 
Tex. Penal Code Ann.
 § 22.04(c)(3);
 Johnson
, 23 S.W.3d at 11; 
Clewis
, 922 S.W.2d at 136.  Accordingly, we overrule Appellant’s second point.

III.  DENIAL OF APPELLANT’S MOTION FOR CONTINUANCE

In his first point, Appellant complains that the trial court erred and thereby violated his due process rights under the Fifth and Fourteenth amendments of the United States Constitution by refusing his request for additional time to hire an attorney of his own choice.  The State, in response, argues that Appellant preserved nothing for review by making an unsworn, unwritten motion for continuance.  Further, the State contends that, even if Appellant’s point is before this court, the trial court did not abuse its discretion by denying his motion for continuance.

A.  Preservation of Error

Article 29.03 of the Texas Code of Criminal Procedure requires that a motion for continuance be in writing.  
Tex. Code Crim. Proc. Ann.
 art. 29.03 (Vernon 1989).  In accordance with this rule, this court, as well as the court of criminal appeals, has explicitly held that a trial court’s denial of an unsworn, unwritten motion for continuance presents nothing for appellate review.  
Dewberry v. State
, 4 S.W.3d 735, 755-56 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000); 
Woodall v. State
, 77 S.W.3d 388, 401 (Tex. App.—Fort Worth 2002, pet. ref’d); 
Felan v. State
, 44 S.W.3d 249, 255 (Tex. App.—Fort Worth 2001, pet. ref’d).

When Appellant’s case was called for trial, the State announced it was ready to proceed, and Appellant’s counsel also stated that Appellant was ready, but that he wanted to ask the court for time to hire a new lawyer.  Appellant then orally requested a continuance to hire another attorney.  The trial court stated, “Well, your motion for a continuance to hire your own lawyer is denied.  Today is trial day.  The case is set for trial at 1:00 and it’s now two minutes until 1:00.”  The court allowed Appellant to present further detailed argument regarding the basis for Appellant’s request, but the court denied his request.

In his brief, Appellant concedes that his motion for continuance was merely oral and that no written motion for continuance appears in the record.  As such, we hold that Appellant has not preserved error for this point.  
See
 
Dewberry
, 4 S.W.3d at 755-56
; 
Woodall
, 77 S.W.3d at 401; 
Felan
, 44 S.W.3d at 255. 

B.  Whether the Trial Court Abused its Discretion

In the interest of justice we nonetheless address Appellant’s contention that the trial court abused its discretion in denying his request for counsel of his own choosing.  
See Brown v. State
, 630 S.W.2d 876, 879-80 (Tex. App.—Fort Worth 1982, no pet.) (addressing whether appellant’s due process rights were violated by the trial court’s denial of his motion for continuance even though no written motion for continuance was filed as required under the code of criminal procedure).  Appellant correctly points out that, in all criminal proceedings, the accused shall enjoy the option of having the assistance of counsel for his defense.  
Gideon v. Wainwright
, 372 U.S. 335, 342-43, 83 S. Ct. 792, 795-96 (1963); 
Ahmadi v. State
, 864 S.W.2d 776, 781 (Tex. App.—Fort Worth 1993, pet. ref’d).  This right, however, is neither unqualified nor absolute, for “that right must be balanced with a trial court’s need for prompt and efficient administration of justice.”  
Ex parte Windham
, 634 S.W.2d 718, 720 (Tex. Crim. App. 1982); 
see also
 
United States v. Barrentine
, 591 F.2d 1069, 1075 (5
th
 Cir. 1979); 
Ahmadi
, 864 S.W.2d at 781
. 

The decision of whether to grant or deny a continuance is within the trial court’s discretion. 
 
See
 
Wright v. State
, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000), 
cert. denied
, 531 U.S. 1128 (2001).
  Further, with respect to a defendant’s assertion of his right to secure his or her own counsel, the court of criminal appeals has enumerated several non-exclusive factors that should guide the trial court in ruling on a motion for a continuance, including:

(1) the length of the delay requested; (2) whether other continuances were requested and whether they were denied or granted; (3) the length of time in which the accused’s counsel had to prepare for trial; (4) whether another competent attorney was prepared to try the case; (5) the balanced convenience or inconvenience to the witnesses, the opposing counsel, and the trial court; (6) whether the delay is for legitimate or contrived reasons; (7) whether the case was complex or simple; (8) whether a denial of the motion resulted in some identifiable harm to the defendant; [and] (9) the quality of legal representation actually provided. 

Windham
, 634 S.W.2d at 720; 
see also Wilson v. State
, 944 S.W.2d 444, 446 (Tex. App.—Houston [14
th
 Dist.] 1997), 
aff’d
, 977 S.W.2d 379 (Tex. Crim. App. 1998).

Two minutes before voir dire began, Appellant told the court:

I would like to have a continuance to hire an attorney.  At the time, I couldn’t afford one, but now I have a good job and I just barely caught up with all of our bills and I need time to gather my witnesses.  I feel [my counsel] has not been working in the best of my interests from the start.

Appellant claimed that he was set up by the police, the bartender, and two waitresses who work at Mermaid’s.  According to Appellant, his attorney advised him against filing charges against the police officers for what Appellant believed was harassment.  While Appellant argued that his only witness to the alleged harassment and assault was Cruz, he also admitted that she was already on her way to his trial.  Appellant also expressed his concern that the jury would not believe the testimony of his wife over that of the Mermaid’s employees and stated that was the reason he “wanted to hire an attorney who [would] do something about all this from the start.”

In his brief,
 Appellant states in conclusory fashion that none of the defenses or witnesses he wished to have testify were presented to the jury.  We note that Cruz did testify at trial, and Appellant’s attorney had the  opportunity to question her.  Moreover, Appellant did not relay to the trial court the names of any witnesses who he would have called in the event the court granted his request for time to hire another lawyer.

The record indicates that the trial court appointed Appellant’s trial counsel on August 24, 2001, which was over nine months before trial began.  Prior to trial, Appellant’s attorney filed numerous motions and requests on Appellant’s behalf.  No other motions for continuance or motions to substitute counsel were filed.  During Appellant’s argument regarding his request for a continuance, the court informed Appellant that he had been on bond for some time, that he had an opportunity to hire a lawyer, and that the court would not postpone the case any longer.  Appellant replied, “I couldn’t afford one then.  I finally got me a good job as a truck driver.  I make good money now.  Caught up with all our bills.”  When the 
court followed up by asking whether Appellant had made any effort to hire another lawyer before the day trial was set, Appellant stated, “Well, it was the weekend.  All this hit us on the weekend.”  At that point, the trial court stated that the case would not be postponed any longer and that he was going to trial.        

Additionally, Appellant did not request a specific period of time that his trial be delayed to find another attorney, and he did not indicate that another competent attorney was prepared to try the case.  As the State points out, Appellant does not allege nor has he shown that he actually received ineffective assistance of counsel in what the State characterizes as a relatively simple case.  We note that it was within the trial court’s discretion to consider whether Appellant’s requested delay was for legitimate or contrived reasons.  
See
 
Windham
, 634 S.W.2d at 720
.

Under the circumstances of this case,
 we conclude that the trial court did not abuse its discretion in denying Appellant’s oral request for continuance.  
See
 
id.
  Consequently, we hold the trial court did not violate Appellant’s due process rights under the Fifth and Fourteenth amendments of the United States Constitution.  We overrule Appellant’s first point.

V.  CONCLUSION

Having overruled Appellant’s two points, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  April 3, 2003