

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00248-CR

_____

DEON RAMLAL, Appellant

V.

THE STATE OF TEXAS

___

On Appeal from County Criminal Court No. 2
Denton County, Texas
Trial Court No. CR-2023-05376-B

___

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellant Deon Ramlal appeals his conviction for family-violence assault. *See* Tex. Penal Code Ann. § 22.01. In two points of error, he argues that (1) the trial court erred by "allowing the State's improper use of gender[-]based evidence of propensity to commit an offense" and (2) he was denied effective assistance of counsel because his trial counsel "allowed" the "gender-based evidence" without objection.

Because Ramlal (1) failed to preserve error on his first issue and (2) failed to prove that his trial counsel's representation was deficient, we affirm.

## I. Background

In the early morning of February 21, 2023, Ramlal's now-ex-wife Elliott called 911 and asserted that he had attacked her. Police officers were dispatched to Ramlal and Elliott's home, and when they arrived, they found Elliott and her and Ramlal's two young children walking down the street in their pajamas. After speaking with Elliott and Ramlal about what they each claimed had happened, the police arrested Ramlal for family-violence assault.

At Ramlal's trial, the jury heard testimony from Elliott; the police officers who had responded to Ramlal and Elliott's home; Sarah Morley, a domestic-violence expert who testified for the State; and Ramlal, who testified in his own defense.

### A. Elliott's and Ramlal's Testimonies

Elliott testified that on the morning of the assault, Ramlal became aggressive and assaulted her after she denied his sexual advances. She explained that they had

2

been in their shared bed, that he had gotten on top of her and held her arms over her head, and that when she had tried to get away, he "bear-hug[ged]" her and "chokeslam[med]" her to the ground. When Ramlal eventually let her leave their bedroom, Elliott woke the children, left the house with the children, and called 911. During Elliott's testimony, the jury listened to a recording of her 911 call; viewed a video that she had recorded on her phone during the assault;[1] and saw photographs of her injuries, which had been taken the day of the assault and in the days following the assault.

Ramlal's testimony painted a different picture. According to Ramlal, when he had tried to initiate sex with Elliott that morning, she turned him down and "elbowed [him]." He then accused her of cheating on him, and they "started getting vulgar with each other." During the argument, Elliott turned around in the bed to face Ramlal. He testified that at that point, because she had just hit him, he grabbed her hands. A few seconds later, he climbed over her to get out of the bed and go to the bathroom. When he came out of the bathroom, Elliott was yelling at him and filming him. Ramlal testified that he wanted to get the phone away from her to stop her from filming him and that when he grabbed the phone, she hit him, kneed him in his

---

[1]In the video, Elliott can be heard telling Ramlal to get away from her and yelling that he had "just attacked [her]." Ramlal, who is shown naked in the video, denies that he attacked her and asserts that he only "grabbed [her] hands." The end of the video shows Ramlal lunging toward her and reaching for her phone, and then the video abruptly ends as she tells him to stop.

"groin," and stepped on his foot. He claimed that Elliott then began throwing things at him, and to get her to stop, he grabbed her and put her in a "bear hug." Ramlal told the jury that he had acted in self-defense that morning.

Both Elliott's and Ramlal's testimonies indicated that their marriage had had problems. Elliott testified that Ramlal had a history of cheating and lying. He had been verbally and emotionally abusive, and he would call her names any time she disagreed with him. He was controlling, insecure, and paranoid, often accusing Elliott of cheating. Elliott testified that her personality and independence changed when Ramlal came into her life; she "became very submissive." During Ramlal's testimony, he admitted that he had cheated and lied in the marriage, that he had called Elliott names, and that he had not been a "good husband."

## B. Morley's Testimony

Morley, the State's domestic-violence expert, had never met Elliott or Ramlal. She sat in the courtroom during Elliott's testimony and then provided expert testimony on domestic violence and the dynamics of a domestic-violence relationship, ultimately opining that Elliott had been a victim of domestic violence.

Morley testified that in a healthy relationship, each partner has an equal amount of power and control through "communication, cooperation, negotiation, trust, [and] honesty." But in an abusive relationship, Morley explained, the power and control dynamic fluctuates, and one person ends up having "significantly more power and control than the other person." The more powerful person will use abusive tactics—

4

verbal, emotional, physical, and sexual violence—to maintain that power and control over their partner. This testimony led to the introduction of the "power[-]and[-]control wheel." Morley testified that the power-and-control wheel was a tool developed by researchers that "best explains how domestic violence looks in a relationship." Specifically, it shows the tactics that abusers use to maintain power and control in a relationship.

The State moved to admit the power-and-control wheel for demonstrative purposes to assist the jury in understanding Morley's testimony. Ramlal told the trial court that he had no objection, and the trial court admitted the power-and-control wheel as a demonstrative exhibit, instructing the jury accordingly. The State then published the power-and-control wheel to the jury and asked Morley questions about its contents. Morley explained that the individual "pie pieces" inside the wheel were the different abusive tactics. She testified that nearly all the domestic-violence victims she had worked with had identified "at least some" of the tactics shown on the power-and-control wheel as tactics they had experienced in an abusive relationship.

## C. Verdict and Sentence

The jury apparently did not believe that Ramlal had assaulted Elliott in self-defense; it found him guilty. Ramlal elected for the trial court to determine his punishment. After the trial court heard the punishment evidence and arguments of counsel, it sentenced Ramlal to 365 days' confinement. The trial court probated the

sentence, placed Ramlal on community supervision for twenty-four months, and entered its judgment accordingly.

This appeal followed.

## II. Evidentiary Complaint

In his first point, Ramlal contends that the trial court erred by allowing the State to use the "sexist" power-and-control wheel[2] as a demonstrative exhibit because the exhibit "suggested propensity to commit an offense because of gender and caused bias or prejudice based on gender." According to Ramlal, this was constitutional error because the trial court "did not ensure that [he] received a fair trial in accordance with the equal protection guaranteed by the United States Constitution and Texas Constitution and violated his constitutional right to trial without regard to his gender."

The State argues that Ramlal failed to preserve this point of error for appellate review because he did not object when the State offered the power-and-control wheel as a demonstrative exhibit. We agree with the State.

### A. Error Preservation

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if

_____

[2]Ramlal asserts that the power-and-control wheel is "sexist" because it has "references to 'Using Male Privilege' and 25 references to indicate a female gender victim and a male gender perpetrator."

not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021); *Golliday v. State*, 560 S.W.3d 664, 669 n.16 (Tex. Crim. App. 2018). The party must also obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020).

Generally, a defendant forfeits a constitutional complaint by failing to object at trial. *Golliday*, 560 S.W.3d at 670–71; *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Anderson v. State*, 301 S.W.3d 276, 279–80 (Tex. Crim. App. 2009). The failure to object to the admission of evidence at trial forfeits complaints about the admissibility of the evidence on appeal even if the complaint concerns an alleged violation of a constitutional right. *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002). The same preservation rules that apply to complaints of the admissibility of evidence also apply to complaints of the use of demonstrative exhibits. *Mead v. State*, No. 02-20-00041, 2021 WL 5933786, at *14 (Tex. App.—Fort Worth Dec. 16, 2021, no pet.) (citing *Graham v. State*, 3 S.W.3d 272, 284 (Tex. App.—Fort Worth 1999, pet. ref'd)).

**B. Error Not Preserved**

Ramlal did not object to the admission of the power-and-control wheel for demonstrative purposes. Rather, when the State offered the exhibit for demonstrative purposes, the trial court asked Ramlal if he had any objections, and he responded,

"No, Your Honor, no objection." On appeal, Ramlal concedes that he did not object to the demonstrative exhibit.

Because Ramlal did not object to the admission of the exhibit for demonstrative purposes, he has failed to preserve his complaint for our review. *See* Tex. R. App. P. 33.1(a)(1); *Golliday*, 560 S.W.3d at 670–71 (concluding, in appeal concerning exclusion of evidence, that appellant did not preserve constitutional claim because he "did not clearly articulate a constitutional basis supporting the admission of the excluded evidence at trial"); *Clark*, 365 S.W.3d at 340 (holding appellant "forfeited his denial-of-due-process claim by not properly preserving error at trial"); *Lovill v. State*, 319 S.W.3d 687, 692 (Tex. Crim. App. 2009) (holding appellant failed to preserve error because she did not "apprise the trial judge that she was complaining about gender-based selective prosecution in violation of her constitutional rights"); *Saldano*, 70 S.W.3d at 891 (declining to address merits of State's admitted error in introducing evidence in violation of Equal Protection Clause because appellant did not object to that evidence at trial). Accordingly, we overrule Ramlal's first point of error.[3]

### III. Ineffective Assistance of Counsel

In his second point of error, Ramlal argues that he was denied effective assistance of counsel because his trial counsel "failed to challenge the placing before

---

[3]In so holding, we do not opine about whether Ramlal has raised a valid constitutional argument.

the [j]ury" the power-and-control wheel as a demonstrative exhibit. He asserts that the failure to object to the exhibit was "so egregious that it fell below the objective standard of reasonableness."

Buried in his second issue, Ramlal also raises other "areas" of alleged deficient performance. From what we can glean from these allegations, Ramlal asserts that his trial counsel failed to timely file discovery motions, "insuring discovery about proposed expert witnesses and exhibits," and that he failed to review the power-and-control wheel before the State offered it as a demonstrative exhibit. Assuming these allegations have been adequately briefed, *see* Tex. R. App. P. 38.1(i), we consider them as part of Ramlal's complaint that his trial counsel "allowed" the power-and-control wheel to be admitted as a demonstrative exhibit without objection.

## A. Standard of Review and Applicable Law

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The record must affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

When an ineffective-assistance claim alleges that trial counsel's performance was ineffective for failing to object to the admission of evidence, the appellant must show that the trial court would have erred in overruling the objection. *Prine v. State*, 537 S.W.3d 113, 117–18 (Tex. Crim. App. 2017) (first citing *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); and then citing *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002)). In other words, the appellant must show that the evidence was inadmissible. *Ortiz*, 93 S.W.3d at 93.

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson*, 9 S.W.3d at 813–14. Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

An appellate court may not infer ineffective assistance simply from an unclear record or a record that does not show why counsel failed to do something. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at

10

593. If, as here, trial counsel did not have that opportunity, [4] we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308. Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim because the record generally does not show counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14; *see, e.g., Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) (holding a record devoid of counsel's reasoning behind particular decision—the failure to object to evidence—generally will not show deficient performance).

We need not address both parts of the *Strickland* test if the appellant makes an insufficient showing on one component. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

## B. Analysis

Ramlal has failed to prove by a preponderance of the evidence that his trial counsel's representation was deficient. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Nava*, 415 S.W.3d at 307. He has failed to meet his burden of proof for three reasons: (1) the power-and-control wheel is a commonly accepted tool used by experts to explain to juries the dynamics of domestic-violence relationships; (2) the record is devoid of counsel's reasoning behind his decision not to object, which may

---

[4]Ramlal filed a motion for new trial but did not assert that he had received ineffective assistance of counsel. The trial court did not hear or rule on the motion. The record is thus silent as to why Ramlal's trial counsel did not object to the power-and-control wheel.

have been based on a sound trial strategy; and (3) based on the totality of the representation, counsel provided reasonable assistance under all the circumstances and prevailing professional norms.

### 1. Admissibility of the power-and-control wheel

Ramlal cannot show that the power-and-control wheel was inadmissible. *See Ortiz*, 93 S.W.3d at 93. The power-and-control wheel is a generally accepted tool that domestic-violence experts use to explain the abuser–victim relationship. *Kingsbury v. State*, 625 S.W.3d 686, 693 (Tex. App.—Fort Worth 2021, no pet.); *James v. State*, 623 S.W.3d 533, 554 (Tex. App.—Fort Worth 2021, no pet.); *Fernandez v. State*, No. 02-18-00483-CR, 2020 WL 1057323, at *4 (Tex. App.—Fort Worth Mar. 5, 2020, pet. ref'd) (mem. op., not designated for publication); *Runels v. State*, No. 03-18-00036-CR, 2018 WL 6381537, at *6 (Tex. App.—Austin Dec. 6, 2018, pet. ref'd) (mem. op., not designated for publication); *see also* Tex. Code Crim. Proc. Ann. art. 38.371(b) (stating that in prosecution of a family-violence offense, and subject to Texas Rules of Evidence, "each party may offer testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim").

The power-and-control wheel has been recognized in case law as helpful to the jury in explaining a domestic-violence relationship. *Kingsbury*, 625 S.W.3d at 702; *see also id.* at 699, 700–01 (noting that trial court overruled defense counsels objections to

admissibility of power-and-control wheel, and to expert's reference to individual victims as "she," to which expert replied with statistics of female domestic-violence victims). Notably, that case law involved domestic-violence relationships comprised of a male abuser and a female victim. *See id.* at 689 (using pseudonym to identify female domestic-violence victim of male abuser); *James*, 623 S.W.3d at 539 (similar); *Fernandez*, 2020 WL 1057323, at *1, *5 (identifying female stalking victim of male abuser and overruling appellant's argument that power-and-control wheel required physical violence); *Runels*, 2018 WL 6381537, at *1 (identifying female victim of aggravated family-violence assault committed by male abuser).

Here, Morley, like many other domestic-violence experts, tied the power-and-control wheel into her own observations and opinions about domestic-violence relationships to aid the jury in understanding her testimony. Because the power-and-control wheel is a commonly accepted tool used by experts to explain to juries the dynamics of domestic-violence relationships, particularly relationships with a male abuser and a female victim, Ramlal cannot show that the trial court would have erred in overruling an objection to it. *See Prine*, 537 S.W.3d at 117–18.

### 2. Record devoid of counsel's reasoning

Even if Ramlal could show that the trial court would have erred in overruling an objection to the admissibility of the power-and-control wheel, the record lacks any evidence regarding his trial counsel's strategy in deciding not to object, and we cannot say that counsel's conduct was "so outrageous that no competent attorney would have

13

engaged in it." *Nava*, 415 S.W.3d at 308; *see Lopez*, 343 S.W.3d at 143–44 (holding record devoid of counsel's reasoning for decision not to object to evidence could not show deficient performance); *Holt v. State*, No. 02-21-00216-CR, 2022 WL 17351582, at *5 (Tex. App.—Fort Worth Dec. 1, 2022, pet. ref'd) (mem. op., not designated for publication) (similar).

We will not infer ineffective assistance from a record that does not show why counsel failed to do something, *Mata*, 226 S.W.3d at 432, but in the absence of evidence of counsel's reasoning, we "will assume a strategic motivation if any can be imagined." *Sabatini v. State*, No. 14-20-00066-CR, 2020 WL 7866724, at *7 (Tex. App.—Houston [14th Dist.] Dec. 31, 2020, no pet.) (mem. op., not designated for publication); *see Holt*, 2022 WL 17351582, at *5 (citing *Sabitini*). The failure to object can be a strategic move that is part of sound trial strategy. *Stafford v. State*, 813 S.W.2d 503, 508 (Tex. Crim. App. 1991); *see Ahmadi v. State*, 864 S.W.2d 776, 783 (Tex. App.—Fort Worth 1993, pet. ref'd) (holding counsel's failure to object to testimony regarding post-arrest silence may have constituted trial strategy).

Here, Ramlal's trial counsel might have strategically decided not to object to the power-and-control wheel to avoid emphasizing it in front of the jury. *See Holt*, 2022 WL 17351582, at *4 ("[C]ounsel could have chosen not to object [to State's referring to defendant as a 'monster'] to avoid unnecessarily emphasizing the term."); *Cole v. State*, No. 02-16-00440-CR, 2017 WL 2813164, at *3 (Tex. App.—Fort Worth June 29, 2017, no pet.) (mem. op., not designated for publication) ("[C]ounsel could have

14

reasonably concluded that an objection would emphasize the photos [of the defendant] taken by [the victim].""); *Orellana v State*, 489 S.W.3d 537, 550 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (similar). Or he may have believed that any objection would be futile given the power-and-control wheel's commonality and acceptance among courts and given its recognition in case law involving domestic-violence relationships comprisising of a male abuser and a female victim. *See Kingsbury*, 625 S.W.3d at 702; *James*, 623 S.W.3d at 554; *Fernandez*, 2020 WL 1057323, at *4; *Runels*, 2018 WL 6381537, at *6. In any event, we cannot conclude that counsel performed deficiently on this record. *See Nava*, 415 S.W.3d at 308.

### 3. Totality of the representation

Ramlal has failed to overcome the strong presumption that his trial counsel's performance was not deficient. *See Nava*, 415 S.W.3d at 307–08. The record indicates that counsel requested discovery from the State approximately sixteen months before trial; that he filed omnibus pretrial motions; that he elected for the trial court to set punishment; that he applied for community supervision, which Ramlal received; that he successfully objected to parts of the State's notice of extraneous offense; that he cross-examined Morley about certain aspects of domestic-violence relationships and about her lack of personal knowledge of the facts of this case; that he cross-examined all the other witnesses who testified for the State; that he called defense witnesses, including Ramlal; that he presented a defense case focused on self-defense and

15

weaknesses in the State's case; and that he obtained a jury-charge instruction on self-defense.

During the punishment phase of trial, counsel again presented a defense case and argued that Ramlal should be placed on community supervision. At sentencing, the trial judge expressed that he had been disappointed by Ramlal's testimony—e.g., the "subtle digs" at and criticism of Elliott and Ramlal's refusal to take responsibility for his actions. Despite this, the judge probated Ramlal's sentence and placed him on community supervision, even though he was "not convinced that [Ramlal] deserve[d]" that opportunity. The judge opined that Ramlal's counsel had "advocated for him very well."

Based on the totality of the representation and the circumstances of the case, Ramlal cannot show that his counsel failed to provide reasonable assistance under all the circumstances and prevailing professional norms. *See Strickland* 466 U.S. at 688–98, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson*, 9 S.W.3d at 813–14.

### 4. No deficient performance

Ramlal has failed to prove that his trial counsel's performance was deficient; accordingly, we cannot conclude that Ramlal received ineffective assistance of counsel. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Nava*, 415 S.W.3d at 307.

We overrule Ramlal's second point of error.

## IV. Conclusion

Having overruled both of Ramlal's points of error, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 17, 2025